SCHWARTZ, Senior Judge
(dissenting).
In this case, it is established beyond reasonable dispute that (a) that the appel-lee law firm’s client lost a claim for $375,000 to which he was entitled if the issue had been pled below, solely because his lawyer did not do so and that (b) the failure specifically to raise the issue by pleading it in any form,[11] as to which no legal excuse, avoidance or explanation is even suggested, fell below the accepted standards of professional conduct in the prosecution and defense of litigation. See Aramarine Brokerage, Inc. v. Hall, Estill, Hardwick, Gable, Golden & Nelson, 95 A.D.3d 464, 944 N.Y.S.2d 499, 500 (N.Y.App.Div.2012) (holding that client stated cause of action for legal malpractice *1135 alleging that counsel’s failure to address ruling in first appeal resulted in client’s inability to defend against counterclaim). To my mind, these facts demonstrate the existence of each element of a legal malpractice claim — professional negligence, causation and damages — see Larson & Larson, P.A. v. TSE Indus., Inc., 22 So.3d 36, 39 (Fla.2009), with the result that liability appears as a matter of law.
The majority’s conclusion to the contrary is, I believe, based upon the idea that the law firm is insulated from liability by what it apparently deems “intervening causes” contained in the particular history of the litigation in the federal district court and court of appeals. Thus, it concludes after a meticulous (if unnecessary) dissection of that litigation that no proximate causation can be demonstrated because “no one could have anticipated what the District Court ultimately did[.]” slip op. at 14. I believe this reasoning is flawed. This is so primarily because the court overlooks or fails to consider basic principles of legal causation which, when properly applied, require a different result. This is established that (a) “a tortfeasor need not be able to foresee — as it is necessarily impossible to foresee — the exact concatenation of events which has in fact ended in damage to another[,]” K-Mart Enters. of Fla., Inc. v. Keller, 439 So.2d 283, 286 (Fla. 3d DCA 1983), review denied, 450 So.2d 487 (Fla.1984), so long as the harmful result falls within the so-called zone of risk created by the defendant’s negligence. See McCain v. Fla. Power Corp., 593 So.2d 500 (Fla.1992); Vazquez v. Lago Grande Homeowners Ass’n, 900 So.2d 587 (Fla. 3d DCA 2004); Keller, 439 So.2d at 286, and that (b) when the failure to avoid an “intervening event” is the very basis of tort liability, the fact that the act actually takes place cannot constitute an “intervening” cause which protects the tortfeasor from liability. See Holley v. Mt. Zion Terrace Apartments, Inc., 382 So.2d 98, 101 (Fla. 3d DCA 1980). These rules should have been controlling in this case.
It is obvious that the reason that a lawyer should plead an existing claim is to avoid the possibility that the claim will otherwise be deemed unsuccessful on that ground alone, as waived or abandoned. And since that unhappy result may occur only by a court ruling to that effect, the ruling itself cannot be a cognizable “intervening cause.” This is true regardless of the precise manner in which that ruling came about. When the majority apparently believes that the eventual and controlling adverse order of the district court, Rose v. M/V “Gulf Stream Falcon,” No. 96-13-Civ (S.D.Fla. Apr. 21, 2000), which followed an initial reversal by the court of appeals, Rose v. M/V “Gulf Stream Falcon,” 186 F.3d 1345 (11th Cir.1999), and was itself affirmed by the Eleventh Circuit, Rose v. M/V “Gulf Stream Falcon,” 250 F.3d 749 (11th Cir.2001) (table), could not reasonably have been anticipated. I think that it is basically wrong for us to third-guess the federal courts by holding, in effect, that what must be deemed a correct resolution of the case.[12] But even if, on some theoretical level of analysis, the majority is right in finding that the federal decision was wrong, the court is still wrong about the effect of the underlying decision. This is so because a lawyer’s skillfulness in pleading or in the draftspersonship of documents in order to avoid even the possibility of a lack of clarity which may be resolved only by expensive and unnecessary litigation, or even worse the complete loss of the client’s case even by “actual” judicial error, which, as shown by the existence of appellate courts, is not unknown. See *1136 Lombardo v. Huysentruyt, 91 Cal.App.4th 656, 110 Cal.Rptr.2d 691, 701 (2001) (“As an abstract principle, it is always foreseeable that a trial court will err, as evidenced by the existence of appellate courts.”). But this must be the first case in which the majority view that it is unforeseeable that an appellate court charged with correcting errors has instead approved an adverse result. In other words, since the underlying decision, “right” or “wrong,” was, by operation of law legally caused by the defendant’s negligence, his malpractice must result in the imposition of liability.
Several cases similarly apply these rules to malpractice cases such as this. See Skinner v. Stone, Raskin & Israel, 724 F.2d 264, 266 (2d Cir.1983) (holding that “unless the trial court’s mistake was a superseding, rather than a contributing cause of the defective default judgment, [defendant attorneys] may be held liable if their negligence was a proximate contributing cause”); Lombardo, 110 Cal.Rptr.2d at 702 (holding, inter alia, that attorneys would not be liable for malpractice “only if probate court’s mistake could be viewed as a superseding cause ... [and concluding] that it could not, because there was evidence that the probate court’s order was foreseeable”).
As the decisions have held, legal malpractice cases arise from faulty or nonexistent pleading or imprecise drafting, even when the position in question is ultimately upheld by the courts when this occurs only after burdensome proceedings which the lawyer was hired to obviate. See First Interstate Bank of Denver v. Berenbaum, 872 P.2d 1297, 1300 (Colo.Ct.App.1993) (stating that an attorney has a duty to his client to anticipate reasonably foreseeable risks such as litigation caused by the inclusion of a provision in an agreement and that “the question remains whether reasonably prudent attorneys should have foreseen that the likely result of its inclusion would be litigation”); accord Temple Hoyne Buell Found, v. Holland & Hart, 851 P.2d 192, 199 (Colo.Ct.App.1992) (same). This case, in which, depending on how one likes to put it, the ultimate catastrophe has occurred or the worst case scenario has played itself out in the loss of an otherwise meritorious and valuable position, presents an a fortiori situation. For these reasons, I believe that the wrong party won this case.

. The appellees have referred to the necessity of raising the claim in an "affirmative defense.” Actually, the proper method was by asserting a separate, distinct claim to the $375,000 in the appellant’s counterclaim. Since the appellees did not mention the claim in any place at all, the distinction makes no difference.

. Like all appellate courts, the Eleventh Circuit is right because it is last.